IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:14-CV-300-MR-DLH

| | |
|---|---|
| AIR KIRIBATI LIMITED, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAAMS, LLC, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on: (1) the Plaintiff's consolidated "Motion To Dismiss CAAMS' Counterclaims Pursuant to FRCP 12(b)(6), or in the Alternative, Motion to Transfer Counterclaims Pursuant to 28 USC 1404(a); Motion to Strike CAAMS' Second Defense and Counterclaim, Third Defense and Counterclaim, Fourth Defense and Counterclaim and Exhibits A and B Pursuant to FRCP 12(f); and Motion to Strike Tenth Defense and Motion Pursuant to FRCP 12(f) and N.C.G.S. 55-15-01(b)(8)" [Doc. 16]; (2) the Plaintiff's "Motion to Strike Conclusory Statement in the Affidavit of Everette C. Mash III" [Doc. 22]; (3) the Magistrate Judge's Memorandum and Recommendation ("M&R") [Doc. 30]; and (4) the parties' objections to the M&R. [Docs. 32 and 33].

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff Air Kiribati Limited ("AKL") is a company organized and existing under the laws of the Republic of Kiribati. [Docs. 1 at 2; 14 at 2]. The Defendant CAAMS, LLC is a limited liability company organized and existing under the laws of Delaware and qualified to do business in North Carolina. [Id.]. CAAMS maintains its principal place of business in Rutherford County, North Carolina. [Id.]. AKL states that it is owned by the Kiribati government and operates the only passenger airline service for the public within the Gilbert Islands. [Doc. 1 at 2]. CAAMS states that it is an aircraft management services company that acquires, refurbishes, and then sells or leases used aircraft. [Doc. 14 at 2]. CAAMS further states that it specializes in refurbishing and selling de Havilland Twin Otter planes. [Id.].

At issue in this case are two contracts executed between the parties that implicate three airplanes. On or about August 30, 2012, the parties entered into an "Aircraft Purchase Agreement" [Doc. 14-1], amended thereafter on or about July 23, 2013 [Doc. 14-2], whereby CAAMS agreed to sell to AKL one de Havilland Twin Otter DHC-6-300 aircraft bearing serial number 647 (the "Twin Otter 647"). The sales price of the Twin Otter 647 was $3,900,000, which was to be satisfied by AKL's payment of $2,400,000 in cash and the delivery to CAAMS of a trade-in CASA 212-200 aircraft (the

"CASA"). The July 23 amendment provided that AKL would pay all costs to repair the CASA in order to make it airworthy for the ferry flight from the Kiribati Republic to CAAMS' United States maintenance base. [Id.]. This first contract, as amended, will be referred to herein as the 2012 Agreement.

On or about November 25, 2013, the parties entered into an "Aircraft Purchase and Sale Agreement" whereby CAAMS agreed to refurbish and sell to AKL one de Havilland Twin Otter DHC-6-300 aircraft bearing serial number 831 (the "Twin Otter 831"). [Doc. 7]. This second contract will be referred to herein as the 2013 Agreement. The sales price of the Twin Otter 831, according to the 2013 Agreement, was $4,200,000, a portion of which was to be paid immediately to CAAMS with the balance to be wired to an escrow agent by November 25, 2013, pending repair and delivery of the plane. [Id.]. Also as a part of the 2013 Agreement, AKL agreed to pay for the ferry insurance related to its obligation, under the 2012 Agreement, to have the CASA piloted from the Kiribati Republic to CAAMS' United States maintenance base. [Id.].

In its Complaint, AKL asserts three claims for relief under North Carolina law. [Doc. 1 at 6-9]. AKL contends that CAAMS breached the 2013 Agreement by failing to deliver the Twin Otter 831 despite AKL's payment therefor (Count I, Breach of Contract) [Id. at 6]. Further, AKL alleges that,

at the time the 2013 Agreement was executed, CAAMS fully intended, and continues presently, to hold the Twin Otter 831 "hostage" in an effort to compel AKL to deliver the CASA to CAAMS pursuant to the 2012 Agreement (Count II, Fraudulent Inducement; Count III, Unfair And Deceptive Trade Practices). [Id. at 6-9].

CAAMS filed its Answer and Counterclaims and responded to the allegations in AKL's Complaint denying that it committed any wrongful conduct. [Doc. 14 at 1-6]. By way of three counterclaims, CAAMS alleges that: AKL breached the 2012 Agreement by failing to deliver the CASA as warranted thereunder (Second Defense and Counterclaim) [Id. at 6-9]; and AKL fraudulently induced CAAMS to enter into the 2013 Agreement as well as engaged in unfair and deceptive trade practices (Third Defense and Counterclaim; Fourth Defense and Counterclaim) [Id. at 9-12]. In support of its last two counterclaims, CAAMS alleges that, at the time the 2013 Agreement was executed, AKL intentionally concealed from CAAMS the fact that the CASA was not airworthy (because its tail section was too rusty) and that it had no intent of delivering the CASA as contemplated by the terms of both the 2012 Agreement and 2013 Agreement. [Id.].

AKL filed its consolidated motion on January 27, 2015. [Doc. 16]. In it, AKL asserts that the 2012 Agreement and the 2013 Agreement have

4

separate forum-selection clauses for litigating disputes, the 2012 Agreement designates Florida as the appropriate forum and the 2013 Agreement designates North Carolina. [Id. at 1-2]. Further, AKL argues that, since its Complaint is premised upon the 2013 Agreement, and CAAMS' counterclaims and certain affirmative defenses are premised upon the 2012 Agreement, such counterclaims and defenses must be dismissed for having been filed in the improper forum or, alternatively, CAAMS' counterclaims and defenses must be transferred to the federal district court for the Southern District of Florida for resolution. [Id.]. Finally, AKL argues CAAMS' Tenth Defense and Motion – that AKL's Complaint be dismissed based upon AKL's failure to obtain a certificate of authority to conduct business in North Carolina – must be stricken as legally insufficient. [Id. at 2]. In its separate Motion to Strike, AKL argues that Paragraph 14 of the Affidavit of Everette Mash III is conclusory and should be stricken. [Doc. 22]. According to AKL, Mr. Mash's statement [Doc. 19 at 2] that "CAAMS, LLC would be seriously inconvenienced and suffer substantial unnecessary expenses were the Court to require CAAMS to litigate its counterclaim against Air Kiribati Limited in Florida[,]" is made without any factual support and thus, should be stricken. [Doc. 23 at 3].

In opposition to AKL's consolidated motion, CAAMS argues that the forum selection clause in the 2012 Agreement is invalid or, alternatively, its enforcement under the circumstances of this case would be unreasonable. [Doc. 18 at 5-15]. With regard to its Tenth Defense and Motion, CAAMS concedes that if AKL's purchase of aircraft in North Carolina merely constitutes transactions in interstate commerce, then AKL did not need a business certificate from the North Carolina Secretary of State. [Id. at 24]. Finally, in addressing AKL's Motion to Strike Mash's Affidavit statement, CAAMS argues that Mr. Mash need not set forth a specific dollar value when relating his legitimate concerns, as the managing member of CAAMS, that simultaneous contract litigation in two fora would cost CAAMS a substantial amount of money. [Doc. 24].

Pursuant to 28 U.S.C. § 636(b), the Honorable Dennis L. Howell, United States Magistrate Judge, was designated to consider AKL's motions and to submit to this Court a recommendation for the disposition of these motions. Magistrate Judge Howell's M&R, filed on May 19, 2015, made certain recommendations to the Court. [Doc. 30]. In particular, the M&R recommended that the Court grant in part AKL's consolidated motion and transfer CAAMS' counterclaims to the United States District Court for the Southern District of Florida for resolution there and for CAAMS to file an

amended answer omitting such counterclaims in this proceeding. [Id. at 11]. The M&R also denied without prejudice AKL's Motion to Strike Paragraph 14 of Mr. Mash's Affidavit. [Id.].

Both AKL and CAAMS filed timely objections to the M&R. [Docs. 32 and 33]. AKL objects to the failure of the M&R to address to portion of its consolidated motion which seeks to strike from the present case CAAMS' second, third, and fourth affirmative defenses, and tenth defense and motion, and Exhibits A and B to CAAMS' Answer and Counterclaims. [Doc 33 at 2]. CAAMS objects to the M&R's conclusion that the forum selection clause in the 2012 Agreement is valid and mandates the transfer of its counterclaims to the Southern District of Florida. [Doc. 32]. This matter is now ripe for the Court's review.

## **STANDARD OF REVIEW**

The Federal Magistrate Act requires a district court to "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007).

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge to which no objections have been raised. Thomas v. Arn, 474 U.S. 140, 150 (1985). Since the parties have raised various specific objections to the Magistrate Judge's M&R, the Court will review the Magistrate Judge's recommendations de novo. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b)(3).

## **DISCUSSION**

AKL moves under Rule 12(b)(6) to dismiss CAAMS' counterclaims. Alternatively, AKL moves under 28 U.S.C. § 1404(a) to transfer CAAMS' second, third, and fourth counterclaims to the Southern District of Florida and to strike CAAMS' corresponding affirmative defenses and Exhibits A and B from this action. The thrust of AKL's argument is that the North Carolina forum selection clause contained in the 2013 Agreement requires this Court to adjudicate only claims that arise from the 2013 Agreement and that any claims that arise from the 2012 Agreement must be adjudicated in Florida according to the forum selection clause contained in the 2012 Agreement. Accordingly, AKL contends that its claims against CAAMS under the 2013 Agreement must be resolved in this Court and that CAAMS' respective counterclaims asserted under the 2012 Agreement must either be dismissed, or severed and transferred to Florida. CAAMS responds by

asserting that the Florida forum selection clause in the 2012 Agreement is unenforceable under the circumstances present here. Therefore, according to CAAMS, all of the parties' claims and counterclaims should be resolved together in the present action.

In taking these positions, however, neither party has addressed whether CAAMS' counterclaims are compulsory or permissive. Under existing Supreme Court precedent, this is the necessary starting point for the analysis regarding the application of the parties' forum selection clauses. Federal Rule of Civil Procedure 13 provides:

> (a) **Compulsory Counterclaim.** (1) *In General*. A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Id. 13(a)(1). In contrast, the permissive counterclaim portion of Rule 13 operates as a catch-all for any counterclaim excluded by Rule 13(a):

> (b) **Permissive Counterclaim.** A pleading may state as a counterclaim against an opposing party any claim that is not compulsory.

Id. 13(b).

The Fourth Circuit has established a flexible, four-factor assessment for district courts to employ when determining whether a party's counterclaim should be treated as compulsory or permissive.

> [T]his circuit suggested four inquiries to determine if a counterclaim is compulsory: (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim? <u>A court need not answer all these questions in the affirmative for the counterclaim to be compulsory. Rather, the tests are less a litmus, more a guideline</u>.

Painter v. Harvey, 863 F.3d 329, 331 (4th Cir. 1988) (internal citations omitted, emphasis added).

The first factor concerns the identity of the factual and legal issues raised by the parties. Factually, both the 2012 Agreement and the 2013 Agreement pertain to the CASA aircraft. Both parties had obligations to perform with regard to that aircraft. The CASA itself formed a significant part of the consideration AKL was providing in the 2012 Agreement. [Doc. 14-1 at 4]. Further, AKL's purchase of Ferry Insurance to safeguard AKL's delivery of the CASA to CAAMS was a material term of the 2013 Agreement which relates to AKL's obligation to deliver the CASA to CAAMS under the 2012 Agreement. [Doc. 7 at 4]. As such, the transaction concerning the CASA was central to, and formed a material part of, each contract. Both

parties raise claims related to the CASA. AKL's first claim is that CAAMS breached the 2013 Agreement by trying to leverage the CASA, and CAAMS' second counterclaim is that AKL breached the 2012 Agreement by failing to deliver that same airplane. Other claims of the parties are likewise factually intertwined. AKL's second claim (fraud in the inducement) and third claim (unfair and deceptive trade practices) directly relate to the CASA. AKL asserts that CAAMS fraudulently induced it to enter into the 2013 Agreement to purchase the Twin Otter 831 but never intended to convey it, instead intending to hold it "hostage" to pressure AKL to deliver the CASA. [Doc. 1 at 6-8]. Similarly, CAAMS' third counterclaim (fraud in the inducement) and fourth counterclaim (unfair and deceptive trade practices) involve the CASA. CAAMS alleges that AKL fraudulently induced CAAMS to enter into the 2012 Agreement by agreeing to convey and deliver the CASA as partial consideration for that contract but failed to do so because it knew at that time that it could not be made airworthy to make the ferry flight to the United States. [Doc. 14 at 9-12]. Accordingly, due to the commonality of both factual and legal issues raised by both parties, this factor weighs in favor of CAAMS' counterclaims being deemed compulsory.

The second factor is whether a judgment regarding AKL's claims would have a preclusive effect on any subsequent suit by CAAMS raising its

counterclaims. A jury verdict in favor AKL on all three of its claims would necessarily determine that CAAMS directly breached the 2013 Agreement and, by implication, breached the 2012 Agreement, committed fraud, and committed unfair and deceptive trade practices in relation to CAAMS obligations surrounding both the Twin Otter 831 and the CASA. Such a favorable verdict for AKL would preclude CAAMS from later suing AKL and asserting it was, in fact, AKL who first breached the Agreements and committed fraud and unfair and deceptive trade practices with regard to these two aircraft. Therefore, this second factor weighs in favor of CAAMS' counterclaims being deemed compulsory.

The third and fourth factors also weigh in favor of the counterclaims being deemed compulsory. The transactions regarding the three planes at issue are inextricably intertwined. Any finder of fact deciding a portion of these claims will need to hear about the whole. Thus, there will be a substantial overlap of evidence if these claims are divided into two trials. This satisfies the third factor. Moreover, the relationship between the claims is more than a mere logical relationship. It is an interweaving of the transactions created by the parties themselves. This satisfies the fourth factor.

The circumstances found in this case reflect the truth of the statement of the Fourth Circuit that "[h]olding counterclaims compulsory avoids the burden of multiple trials with their corresponding duplication of evidence and their drain on limited judicial resources." Painter, 863 F.3d at 332. Having found all four factors of the Painter test weigh in favor of requiring all claims and counterclaims to be tried together, the Court concludes as a matter of law that CAAMS' counterclaims are compulsory.

Having determined that all of the claims must be tried in one action, the Court next turns to the question of whether venue in this Court is proper for that single action. This involves an analysis of the competing forum selection clauses in the two Agreements. Venue in federal courts is generally governed by 28 U.S.C. § 1391. As noted by the Supreme Court:

> That provision states that "[e]xcept as otherwise provided by *law* ... this section *shall* govern the venue of *all civil actions* brought in district courts of the United States." § 1391(a)(1) (emphasis added). It further provides that "[a] civil action may be brought in — (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." § 1391(b). When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case

> must be dismissed or transferred under § 1406(a). Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b).

Atl. Marine Constr. Co. v. U.S. Dist. Ct., 134 S. Ct. 568, 577 (2013) (footnote omitted). Ignoring for the moment the forum selection clauses of each Agreement, venue is proper in this Court under § 1391 because this judicial district is the one in which defendant CAAMS "resides." In addition, the two Agreements were executed by the parties in this district. Those events were significant in giving rise to the parties' claims. Therefore, since the federal venue statute establishes that this suit may be brought in this district, no forum selection clause in any private contract may render venue in this district improper. Atl. Marine, 134 S. Ct. at 578.

Having determined that venue according to *law* is proper in this district, the Court turns to what effect, if any, should be given to the forum selection clauses the parties adopted by *contract*. Since AKL brought suit here, the Court will first examine the forum selection clause contained in the 2013 Agreement.

The entire forum selection (and choice of law) clause contained in the 2013 Agreement states:

**8.5     Governing Law**

>   This Agreement shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of North Carolina/USA. There shall be no application of any conflict of laws rules inconsistent with this Section. Each of the Parties and the Escrow Agent irrevocably submits to the non-exclusive jurisdiction of the courts sitting [sic] Mecklenburg County, North Carolina over any action or proceeding arising out of or relating to this Agreement and the Parties and the Escrow Agent irrevocably agree that all claims in respect of such action or proceeding may be heard and determined in such courts.

[Doc. 7 at 17]. As written, this passage is quite broad and AKL, in filing suit in federal court instead of state court, has given this provision a very broad reading. A more natural reading of the phrase "non-exclusive jurisdiction of the courts sitting [sic] Mecklenburg County, North Carolina over any action or proceeding arising out of or relating to this Agreement" would connote the state courts of North Carolina. The United States District Court for the Western District of North Carolina sitting in diversity, however, is but another North Carolina court whose jurisdiction encompasses Mecklenburg County, and which sits in that county. CAAMS does not dispute this interpretation, as it has not objected to venue in this district. Given that the parties have agreed to a contractually valid forum selection clause, Atlantic Marine directs that this Court give effect to the parties' agreement and retain this matter in this district. Atl. Marine, 134 S. Ct. at 581.

The second part of the 2013 forum selection clause passage determines that this Court is the proper venue for CAAMS' counterclaims as well as AKL's claims. "[T]he Parties … irrevocably agree that **all claims in respect of** such action or proceeding may be heard and determined in such courts." [Doc. 7 at 17 (emphasis added)]. The counterclaims, being compulsory, are "claims in respect of such action [i.e., AKL's claims]." The parties have "irrevocably agree[d] that **all** *claims*" may be heard by the appropriate court. [Id.]. The statutory subject matter jurisdiction and venue requirements are met by hearing these matters in this Court, and it effectuates the parties' contractual agreement to resolve **all** claims. Thus, this Court is an appropriate court for this litigation, both claims and counterclaims. For these reasons, the Court is both the proper venue and the proper forum to adjudicate all claims of both parties.

AKL's argument that CAAMS' counterclaims and related defenses must yield to the 2012 Agreement's forum selection clause is unavailing. The entire forum selection (and choice of law) clause contained in the 2012 Agreement states:

> 10.5 The laws of the State of Florida, excluding its conflicts of laws rules shall govern this Agreement. The courts of Florida in Palm Beach County District Court have exclusive jurisdiction to resolve disputes arising out of this contract.

16

[Doc. 14-1 at 8]. AKL's consolidated motion seeks the dismissal of CAAMS' counterclaims pursuant to Rule 12(b)(6), or in the alternative, the transfer of CAAMS' counterclaims to Florida pursuant to 28 USC § 1404(a); the striking of CAAMS' Second Defense, Third Defense, Fourth Defense, and Exhibits A and B pursuant to Rule 12(f) from this action [Doc. 16]; and the striking of the "Conclusory Statement in the Affidavit of Everette C. Mash III." [Doc. 22].

AKL argues that it should be able to obtain dismissal of CAAMS' counterclaims, or at the very least the transferal of them to Florida, since they arise from the 2012 Agreement and were filed in a forum other than the one specified in that agreement. The 2012 Agreement's forum selection clause provides that exclusive jurisdiction exists in Florida. However, the 2012 Agreement, unlike the 2013 Agreement, says nothing about whether the parties' selection of a Florida forum would be irrevocable. The 2013 Agreement states the parties "irrevocably submit[ ] to the non-exclusive jurisdiction" of the Mecklenburg County, North Carolina courts. The 2013 Agreement modified some of the terms of the 2012 Agreement as it pertains to the CASA aircraft. The parties likewise modified their decision with regard to which courts would preside over any action to adjudicate "all claims" (and counterclaims) arising out of or relating to it. The Court will not undo the parties' modifications to their agreement or engage in the unnecessary and

wasteful exercise of severing AKL's claims from CAAMS' counterclaims and transfer the latter to Florida. AKL's consolidated motion to dismiss, and its alternative motion to transfer [Doc. 16], will be denied.[1]

The Court now turns to AKL's remaining motion, its motion to strike CAAMS' Tenth Defense. [Doc. 16]. CAAMS has conceded that if AKL's purchase of aircraft in North Carolina merely constitutes transactions in interstate commerce, then AKL did not need a business certificate from the North Carolina Secretary of State. [Doc. 18 at 24]. CAAMS has proffered no facts to support a showing that AKL was transacting its ordinary business in North Carolina such that it needed such a business certificate. [Id.]. The facts recited by the parties in their pleadings show that AKL's ordinary business is shuttling passengers by aircraft within the Gilbert Islands. [Doc. 1 at 2]. AKL's only connection to North Carolina appears to be its executing two contracts with CAAMS in this state to procure airplanes necessary to carry out its ordinary business at home. For these reasons, the Court will grant AKL's motion to strike CAAMS' Tenth Defense. [Doc. 16].

---

[1] Since CAAMS' Affidavit of Everette C. Mash III is irrelevant to the consideration of the dismissal and venue motions, AKL's motion to strike that affidavit [Doc. 22] will be denied as moot.

**ORDER**

**IT IS, THEREFORE, ORDERED** that: AKL's Motion to Dismiss CAAMS' Counterclaims pursuant to Fed.R.Civ.P. 12(b)(6) [Doc 16] is **DENIED**; AKL's Alternative Motion to Transfer CAAMS' Counterclaims pursuant to 28 U.S.C. § 1404(a) [Doc. 16] is **DENIED**; AKL's Motion to Strike CAAMS' Second Defense and Counterclaim, Third Defense and Counterclaim, Fourth Defense and Counterclaim and Exhibits A and B pursuant to Fed.R.Civ.P. 12(f) [Doc. 16] is **DENIED**; AKL's Motion to Strike CAAMS' Tenth Defense [Doc. 16] is **GRANTED**; and AKL's Motion to Strike Conclusory Statement in the Affidavit of Everette C. Mash III [Doc. 22] is **DENIED as moot.**

**ACCORDINGLY, IT IS FURTHER ORDERED** that: AKL's objections to the M&R [Doc. 33] are **REJECTED**; and CAAMS' objections to the M&R [Doc. 32] are **ACCEPTED in part**. The Magistrate Judge's M&R [Doc. 30], not otherwise inconsistent with this Memorandum of Decision and Order, is **AFFIRMED**.

**IT IS SO ORDERED.**

Signed: September 29, 2015

Martin Reidinger
United States District Judge